## McDONOGH *v.* CALLOWAY et al.

Where the owner of ground in a city, in dividing it into lots, reserves a part of it adjoining to a contiguous proprietor and extending the whole length of the property, for a public alley, and after selling one of the lots with reference to a plan on which the alley is described and as fronting on the alley, sells the remaining lot, as well as his property in the soil of so much of the alley as is adjacent to the second lot, subject to the servitude of way previously established in favor of the lot first sold, the second purchaser will hold the property acquired by him, subject to the servitude of way established in favor of the first lot ; but the servitude. will not exist in favor of any owner of the contiguous property on the other side of the alley; and the purchaser of the second lot and right to the soil of the adjacent alley will have the right, common to every proprietor, of erecting a wall or fence upon this boundary line separating his property from his neighbors, the right not being imcompatible with the servitude of way.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.  The facts of this case are stated in the opinion of the court, *infra.*

*Grivot* and *Roselius,* for the plaintiff. *J.,* and *H. H. Strawbridge,* for the appellant, contended that he had not obstructed the servitude of way established in favor of the lot bought by plaintiff from the appellant's vendor, *J. P. Jones.* C. C. arts. 497, 654, 823. Servitudes are real rights, and can only be established by written evidence. There is no such evidence of any servitude of way, in favor of the lots owned by plaintiff on the north side of the alley. C. C. arts. 642, 644, 715, 718, 749, 752. The alley was not a public one. C. C. art. 790.

The judgment of the court was pronounced by

King, J. *John P. Jones* owned a lot of ground running from New Levée to Tchoupitoulas street. On the northern side of this lot he made an alley extending entirely through the square, with a width of six feet two inches on New Levée street, and of five feet on Tchoupitoulas street, and divided the remainder of the property into three lots, one fronting on New Levée, another on Tchoupitoulas, and the third on the alley. Of the whole he caused a plan to be made by *Pilié,* the city surveyor, on which the alley is called a *passage commun.* *McDonogh,* the plaintiff, is owner of the lots contiguous to this alley on the north, and when erecting buildings upon them placed his walls about four feet from *Jones'* line, thus leaving a passage of about ten feet. In 1823, *Jones* sold to *Maloney* the lot on New Levée street, representing its front on that street to be twenty-three feet, with a depth of one hundred and nine feet fronting on the common passage. The alley was expressly excepted from the sale, and reference is made in the act to the plan of *Pilié* This lot, after several mesne conveyances, was purchased by the plaintiff, with all its rights, privileges and appurtenances. The lot on Tchoupitoulas street was sold by *Jones* to *Lamb,* also with a reservation of the alley. *Calloway* and *Fischel* purchased from *Lamb,* and *Jones* intervened in the sale, and conveyed to them his right, title and property in the alley, subject however to the clauses and conditions contained in the sale from *Jones* to *Maloney.* *Calloway* has since acquired the rights of his co-proprietor. In 1843, the heirs of *Jones,* conceiving that they had the exclusive right to the property and use of that part of the alley adjoining the lot sold by their ancestor to *Maloney,* and now owned by the plaintiff, erected a fence across the entrance at New Levée street, and along the northern line of the six feet alley, thus closing the common passage. About the same time *Calloway* erected a fence along the northern limit of the six feet passage purchased by him, separating his possessions from those of the plaintiff, but made no cross fence at the extremities, leaving the passage free. *McDonogh* commenced this action by an injunction, complaining that the defendants, *Calloway* and *J. E.,* and *Alfred Jones,* had disturbed him in his right to the use of this common passage, and prayed that the obstructions should be removed, and the defendants perpetually enjoined from opposing further hindrance to his enjoyment of the right of free ingress and egress through this common way. The cause was first tried between the plaintiff and the defendants, *Jones,* and was twice taken by appeal before the Supreme Court, where it was determined that *J. P. Jones* had dedicated the passage to the public, and the obstruction opposed by the defendants, *Jones,* to its free use were ordered to be removed. In those cases the facts and respective titles of the parties are fully stated. See 7 Rob. 442 and 8 Rob. 92. Upon the trial between the present parties a similar judgment was rendered by the District Court against *Calloway,* from which he has appealed.

The question between the present parties, differs materially from that which arose between the plaintiff and the defendants, *Jones.* The latter closed up a

passage subject to a servitude of way in favor of the plaintiff; whereas the present defendant has only erected a fence on the boundary line between his property and that of the plaintiff, and has opposed no obstacle to its use as a common alley. *J. P. Jones* clearly never abandoned his right of property to the soil of that part of the alley adjacent to the defendant's lot; but, on the contrary, first reserved it from sale, and then expressly conveyed it to the defendant, subject however to the servitude of way previously established in favor of *Maloney.* His intention to retain the property and preserve the northern line of the passage as his boundary, was further manifested as far back as 1827, when he erected upon it a fence which stood several years. And, in 1832, the defendant *Calloway,* who had then become the owner of the lot on Tchoupitoulas street, enclosed all of the alley which he had acquired, and in a formal act asserted, not only his ownership of the soil, but his intention no longer to permit it to be used as an open way. The plaintiff, however, has acquired a just claim to the free use of the passage by his purchase from *Maloney,* in which he must be maintained; but the servitude to which he is entitled has been established only in favor of the lot fronting on New Levée street, and not in favor of the plaintiff's property north of the passage. *Calloway,* as the owner of the soil subject to this servitude, has the right, common to any other proprietor, of erecting a wall or fence upon his boundary line, separating his property from that of his neighbors. Of this right neither *Jones* nor his vendors appear to have divested themselves, and the exercise of it is not incompatible with the plaintiff's right of passage.

It is therefore ordered that the judgment of the District Court be reversed and the injunction dissolved; and that the plaintiff restore the fence upon the boundary line between his property and that of the defendant to the condition in which it was when removed by the order of the court; the appellee paying the costs of both courts.